*NOT FOR PUBLICATION*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                         :
                         :
ASHLEY EICH,              :
                         :
              Plaintiff,   :       Civil Action No. 17-5815
                         :
      v.                :
                         :          **OPINION**
                         :
NANCY A. BERRYHILL,   :
Acting Commissioner of Social Security,  :
                         :
             Defendant.  :
_____:

**WOLFSON, United States District Judge:**

Ashley Eich ("Eich" or "Plaintiff"), appeals from the final decision of the Acting Commissioner of Social Security, Nancy A. Berryhill ("Defendant") denying Plaintiff disability benefits under Titles II and XVI of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was based on substantial evidence and, accordingly, affirms the decision.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on April 17, 1985, and currently lives in an apartment with her husband and three cats. AR 27, 43. Although she has held various jobs, most recently as a dog groomer at Petco, she not had fulltime employment since November of 2013. AR 357. Plaintiff seeks disability benefits due to bipolar disorder, agoraphobia, anxiety, and depression, and has alleged a variety of symptoms, including frequent panic attacks and severe agoraphobia.

On December 31, 2013, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. AR 61. Plaintiff also protectively filed a Title XVI application for supplemental security income on January 16, 2014. AR 67. In both applications, Plaintiff alleged disability beginning November 23, 2013. AR 66-67. These claims were denied initially on May 16, 2014, AR 76, and upon reconsideration on September 22, 2014. AR 101. Thereafter, Plaintiff filed a written request for hearing on September 26, 2014. AR 136. On March 3, 2016, a hearing was held before ALJ Deborah Mande. AR 36-65. On April 25, 2016, the ALJ issued a written decision affirming the denial of Plaintiff's benefits. AR 12-34.

Plaintiff contests several aspects of the ALJ's decision. She argues that the ALJ 1) erred in her designation of Plaintiff's severe impairments; 2) erred in her analysis of the mental Listings; 3) erred in her weighing of the opinion evidence of Plaintiff's treating psychiatrist; 4) erred in her assessment of Plaintiff's credibility; and 5) posed an inaccurate hypothetical question to the vocational expert ("VE") at the hearing.

### A. Medical Evidence

1. <u>Hospital Records</u>

Plaintiff has had a number of hospital visits since 2009; however, because Plaintiff alleges onset of disability of November 23, 2013, the Court will only recount evidence after that date. Plaintiff was admitted to St. Luke's Warren hospital on June 5, 2014, reporting "severe anxiety," because her house was very noisy. AR 385. She admitted "wanting to end it b/c she [wanted] the anxiety to stop." AR 385. In a crisis assessment form, Plaintiff reported "severe sensory overload" due to noisy neighbors that made her feel as if an "alien" would burst out of her chest. AR 443-44. While hospitalized, Plaintiff reported light and sound sensitivity, AR 496, and agoraphobia. AR 502. She attended group therapy, and was noted to be "friendly and

pleasant," though a disturbing video at one group session caused her to leave early. AR 478, 496, 502. On June 9, 2014, after medication adjustments, Plaintiff was discharged with a "Relapse Prevention Plan" that included continuing her "trips to Barnes & Noble to make it even more comfortable." AR 400·401, 538.

At a return trip to the hospital in October 2014 due to depression symptoms, Plaintiff reported her symptoms as "mild," AR 694, and mental status examinations were normal, and she was assigned a GAF score of 94.[1] AR 693, 696.

In November 2014, Plaintiff was admitted to Hunterdon Hospital for four days due to reported depression, suicidal ideation, and non-compliance with medication. AR 701, 739-41. At intake, treating physician Mukesh Patel, M.D., assigned a GAF score of 20. AR 741  Plaintiff reported that she had been seeing a cognitive behavioral therapist once or twice per week for the past year . AR 701. Dr. Patel noted that Plaintiff had "not done very well" recently, "needing hospitalizations at Warren Hospital."  AR 701. Dr. Patel remarked that Plaintiff had recently discontinued her Abilify "because it caused increasing weight gain," which led to "her mood…plummeting with increasing depression and with increasing suicidal ideations of wanting to take an overdose or cut herself." AR 701. Patel noted that Plaintiff had reported sedative effects with Topamax and Seroquel, and ineffective results with Effexor. AR 701. At Plaintiff's

---

[1] "GAF" stands for Global Assessment of Functioning." GAF scores are used by "mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults." *Irizarry v. Barnhart*, 233 Fed. Appx. 189, 190 n. 1 (3d Cir. 2007). "A GAF score of 50 or below indicates serious symptoms, while a GAF score of 51 through 60 indicates moderate symptoms." *Rivera v. Astrue*, 9 F. Supp. 3d 495, 504 (E.D. Pa. 2014) Although GAF scores have "fallen somewhat into disfavor," as the American Psychiatric Association abandoned the GAF scale in the most recent edition of the DSM ("DSM-V"), they remain medical evidence that an ALJ must consider. *Nixon v. Colvin*, 190 F. Supp. 3d 444, 447 (E.D. Pa. 2016).

request, Dr. Patel started her on a course of Lexapro, which she "tolerated . . . quite well, and she denied side effects from her medications." AR 702. Plaintiff also "attended all the groups, milieu and therapeutic meetings, and "she denied any suicidal ideations during this hospitalization." AR 702, 713. Dr. Patel's mental status examinations prior to discharge were normal, although the doctor noted that Plaintiff had an anxious/depressed mood on one occasion, and she was assigned a GAF score of between 40 and 50 at discharge AR 712, 715.

2. <u>Dr. Hailing Zhang and Dr. Pradip Gupta</u>

Plaintiff saw Hailing Zhang, M.D. for treatment for anxiety and agoraphobia in August 2012, and again in late 2013 and early 2014. AR 775-83. His findings were largely consistent across sessions, and he noted that Plaintiff wanted to file for disability benefits. AR 776. He found gloomy/worried mood, fair insight and judgment, good impulse control, limited concentration, full orientation, goal-oriented thought process, stable affect, cooperative behavior, and no delusions during a mental status examination. AR 776-77. He assessed bipolar disorder and obsessive compulsive disorder, and assigned a GAF score of 55. AR 777.

In April 2014, Dr. Pradip Gupta, conducted an examination of Plaintiff at the behest of a state agency. AR 357-59. Plaintiff reported prior diagnoses of bipolar disorder and generalized anxiety disorder with panic attacks and agoraphobia, describing a history of PTSD, "avoiding people's contact," intermittent paranoia, nightmares, and flashbacks. AR 357. Dr. Gupta rated the accuracy of her personal history as "fair." AR 357. Dr. Gupta's mental status examination revealed, *inter alia*, fair attitude, coherent/relevant speech, circumstantiality and lack of goal direction of speech, decreased speech output, full alertness and orientation, decreased fund of information, intact recent memory, fair remote memory, normal concentration and attention, intact ability to perform simple calculations, blunted but appropriate affect, limited insight, and cooperative attitude and behavior. AR 358-59. Plaintiff reported not generally driving or taking

4

public transportation, but being able to cook and do light household chores, use her computer, read and write, and play video games. AR 359. Dr. Gupta also opined that Plaintiff was not competent to handle her own funds. AR 359. He diagnosed Plaintiff with bipolar disorder in a depressed state, with possible psychosis, of moderate severity. AR 359. He further assessed a history of polysubstance abuse. AR 359.

### 3. Kevin Kassick

Plaintiff underwent outpatient counseling with Kevin Kassick, LPC, LCADC, for nine months between January and September 2014. AR 583-605, 617-26. During a January 2014 intake visit, Kassick recorded that Plaintiff had a history of anxiety, panic attacks, and agoraphobia, and estimated the severity of Plaintiff's impairments to be high based on Plaintiff's "description of interference with functioning" and "risk of morbidity." AR 583. Plaintiff reported being married, with a supportive partner, and Kassick found her to be intelligent, with "good communicative skills, and [was] friendly, attentive, fully communicative, casually groomed, but tense." AR 583. He noted that she appeared anxious and her thought content was depressed. AR 584. Kassick performed a mental status examination, finding anxious but appropriate affect, congruent mood, intact and logical associations, no suicidal ideations, fair insight and judgment, and cooperative behavior. AR 584. His diagnosis was panic disorder and agoraphobia. AR 584. Plaintiff returned every month until September 2014, and Kassick's reports from these sessions are consistent with the earlier notes, and findings on mental status examination are identical or nearly identical to the first session. AR 588, 590, 592, 594, 596, 598, 600, 602, 604, 617, 619, 621, 623, 625. For instance, on July 9, 2014, Kassick described Plaintiff as "listless," "unhappy," and "depressed," AR 617, and on July 18, 2014, Kassick described Plaintiff as "flat," "unhappy," "downcast," and "depressed." AR 619.

### 4. Julia Stahl

Plaintiff subsequently visited Julia Stahl, LCSW, on six occasions between October 2014 and May 2015. AR 791-95. In October, 2014, Plaintiff reported symptoms of agoraphobia and bipolar disorder, and stated she had ceased driving six months prior. AR 791. In November 2014, Plaintiff attended another session with Stahl, and claimed difficulty leaving the house, stating that she was able to leave for medical appointments and to visit Barnes & Noble with her husband, which she considered a "safe place." AR 792. Ms. Stahl's mental status examination found anxious appearance, but otherwise found her friendly, attentive, communicative, and well-groomed. AR 792. Later the same month, Plaintiff reported that she did not experience symptoms when two friends of her husband came to the house to play Dungeons and Dragons, because she views these people as "safe." AR 793. She reported good medication compliance. AR 793. Ms. Stahl's notes of examination are identical to the prior visit, noting that her self-care and domestic skills were normal. AR 793. Subsequent notes from December 2014 and May 2015 and are consistent with the earlier notes. AR 794-95. Plaintiff told Stahl in December 2014 that she was able to go to her mother's house to groom her dog, but did not believe she was able to work due to her agoraphobia. AR 794. Plaintiff did not return to Stahl until May 2015, when Stahl attempted to discuss a plan for Plaintiff to return to work, but Plaintiff was not receptive to the plan. AR 795.

5. <u>Dr. Subhash Javia</u>

In March 2014, Plaintiff commenced treatment with Dr. Subhash Javia, M.D. AR 613. Between March 2014 and February 2016, Plaintiff visited Dr. Javia approximately once per month. AR 610-15, 765-74. During an intake evaluation, Dr. Javia performed a mental status examination, and he found normal judgment, thought content, average memory, logical thought process, but impaired impulse control, concentration, and attention, as well as partially present insight. AR 613. Plaintiff reported symptoms of depression, severe mood swings, anger, and

agoraphobia, with a worsening of symptoms since November 2013. AR 613. At the initial

session, Plaintiff told Dr. Javia she was applying for disability. AR 613. She reported taking

Lamictal, Klonopin, and Zofran. AR 614. Dr. Javia assessed bipolar disorder and a history of

polysubstance abuse, and assigned a GAF score of 31. AR 31.

During subsequent visits in the spring of 2014, Plaintiff discussed her disability

application on multiple occasions, and told Dr. Javia that she was unable to work. AR 612.

Plaintiff told Dr. Javia that she felt like "somebody ripped off my skin" and was observed to be

moody, paranoid, and guarded. AR 612, 770. Plaintiff missed her early June 2014 appointment,

but returned at the end of the month, when she described her recent admission to St. Luke's and

reported good responses with therapy. AR 612. Subsequent notes from 2014 through early 2016

are only partly legible, and do not contain findings on additional mental status examinations. AR

764-69. On August 19, 2014, Plaintiff told Dr. Javia that "Abilify was doing an incredible job."

AR 769. Dr. Javia's notes generally record consistent symptoms of depression, anxiety, and

agoraphobia, with some improvement noted in 2015 and 2016. AR 764-69. The January 2015

notes appear to contain a reference to Plaintiff working recently, but she reported that "[t]hey

terminated my job." AR 767. In February 2015, Plaintiff told Dr. Javia that she "love[s]

Lexapro," that she was able to drive two miles and was having "no panic attacks." AR 767. In

March 2015, Plaintiff reported no recent panic attacks and that she was doing "good." AR 767.

Plaintiff reported that despite using "noise absorbers" and ear plugs to block out external noises,

she was still depressed and had difficulty thinking at times. AR 763. Consequently, Dr. Javia

added Risperdal to her medications. AR 763. Dr. Javia also suggested that Plaintiff move due to

her fear of noise. AR 764. Plaintiff missed several appointments in 2015. AR 765-66. In January

2016, Plaintiff reported that her holidays were "OK" and that she had visited her parents' house with her husband. AR 764.

Dr. Javia completed a medical source statement in March 2016, in which he listed Plaintiff's impairments as bipolar disorder and panic disorder. AR 785. He described Plaintiff as "guarded," and said Plaintiff could not work at a regular job due to her depression, anxiety, and fear of crowds. AR 786, 789. Dr. Javia gave Plaintiff a rating of "poor to none" in every category of work-related mental functioning, with the exceptions of Plaintiff's abilities to make simple work-related decisions or set realistic goals, which he rated as fair. AR 786-89.[2]

6. Agency Medical Experts

On May 16, 2014, Pamela Foley, Ph.D., reviewed Plaintiff's medical record and prepared a mental RFC assessment. AR 71-76. Foley found Plaintiff to have severe impairments of affective disorders, substance addiction disorders, and anxiety disorders. AR 72. Comparing the

_____

[2] Specifically, Dr. Javia's found that Plaintiff had poor to no ability in the following categories:
Poor to no ability to remember locations and work-like procedures
Poor to no ability to understand, remember, and carry out detailed or very short and simple instructions
Poor to no ability to maintain attention and concentration for extended periods (e.g. 2 hours or more at a time)
Poor to no ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances
Poor to no ability to sustain an ordinary routine without special supervision
Poor to no ability to work in coordination with or proximity to others without being distracted by them
Poor to no ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
Poor to no ability to interact appropriately with the general public
Poor to no ability to ask simple questions or request assistance
Poor to no ability to accept instructions and respond appropriately to criticism from supervisors
Poor to no ability to respond appropriately to changes in the work setting
Poor to no ability to travel in unfamiliar places or use public transportation
AR 786-89.

medical evidence against the "B" criteria of the Listings, she diagnosed the following: (1) moderate restriction of activities of daily living; (2) moderate difficulties maintaining social functioning; (3) moderate difficulties maintaining concentration/persistence/pace; and (4) no repeated episodes of decompensation. AR 72. In her RFC assessment, Foley found moderate to no limitations in all areas, except for a marked limitation in interacting with the general public. AR 73-75. Foley wrote that "ADLs indicate that the claimant needs reminders for personal care and medication, can prepare simple meals, clean, do laundry, drives but not always alone, shops by computer, reads and plays video games but less motivated, socially anxious, gets along with landlord but reports 'much disdain for authority,' has had difficulty at work due to in appropriate [sic] behavior." AR 75. She further reported that Plaintiff "is able to understand and follow simple instructions, to sustain pace, persistence, concentration and attention to simple, repetitive tasks for at least 2-hour segments during a normal workday, and to adequately relate and adapt in low-contact work-like settings." AR 75. Based on these findings, Dr. Foley concluded that Plaintiff was "not disabled" during the relevant period. AR 75. On reconsideration in September 2014, Amy Brams, Ph.D., affirmed Dr. Foley's RFC in all respects. AR 97-100.

### B. Plaintiff's Testimony Before ALJ

Plaintiff testified at the March 3, 2016 hearing before ALJ Mande. Plaintiff testified that she graduated from high school and has technical training as a dog groomer. AR 43. She last worked full-time in November 2013 as a dog groomer at Petco, and did some part-time dog grooming for private clients in 2014. AR 43-45. She has prior work experience at Borders performing customer service, working in the company café, and organizing books. AR 44. She was terminated by Petco due to her anxiety issues and panic attacks. AR 45-47.

She testified that she has a driver's license, but does not drive and does not take public transportation. AR 43. She stated that, due to noise sensitivity, she normally stays in the bedroom

of the apartment that she and her husband shared. AR 48. Her daily activities include watching television, reading (which she enjoys "a lot"), and performing light housework, including washing dishes, vacuuming, and cooking, during which she wears earplugs. AR 48. She testified that she could not afford therapy, but, nonetheless, sees a psychiatrist once per month. AR 49. She has a small group of online friends that she interacts with while playing World of Warcraft. AR 50. She testified that even though the game is violent, it does not trigger panic attacks because it is "fantasy based." AR 57. She also has a Facebook account and an email account. AR 50. She goes to her mother's house once or twice per month, where she enjoys playing with her mother's dog, and goes to her father's house once every couple of months. AR 51. She pays bills online. AR 52. She testified that she experiences panic attacks three to four times per week. AR 55. Her medications include Lamictal, Klonopin, Lexapro, Risperdal, and Zofran, as well as vitamin D. AR 59.

### C. Vocational Expert's Testimony

At the hearing, the ALJ took the testimony of Daniel Rappucci, an impartial VE. AR 60-65.. The ALJ asked the VE to assume a hypothetical individual who could perform work at all exertional levels, but who could not have exposure to heights or hazards; who is limited to routine, repetitive tasks; who must experience infrequent changes in the work setting; who can have only occasional interaction with co-workers and supervisors; and no interaction with the general public. AR 62. The VE testified that such an individual would not be able to perform Plaintiff's past relevant work, AR 62, but identified other jobs available in significant numbers in the national economy to the hypothetical individual, including the representative occupations of industrial cleaner, hand packager, housekeeper, and small parts assembler (ranging from medium to light exertion). AR 62-63. The VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles (DOT). AR 63.

### D. ALJ's Decision

ALJ Mande issued her decision on April 25, 2016. AR 15-29. At step two, she concluded that Plaintiff had the severe medically determinable impairments of affective disorder, anxiety disorder, and personality disorder. AR 17. At step three, she found that Plaintiff's impairments did not meet or equal one of the listed impairments. AR 18-20. At step four, the ALJ found that Plaintiff had the RFC for a range of work at all exertional levels, with limitations designed to address her mental symptoms. AR 20-27. With the assistance of the testimony of the VE, the ALJ concluded that Plaintiff could not perform her past relevant work as a dog groomer and sales attendant. AR 27. At step five, and again in consultation with the VE, the ALJ determined that Plaintiff retained the RFC to perform a range of jobs that exist in significant numbers in the national economy, including the representative occupations of industrial cleaner, hand packager, housekeeper, and small products assembler. AR 27-28. Therefore, the ALJ found that Plaintiff was not disabled from November 23, 2013 through the date of her decision. AR 28.

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record."  42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  *Jones v. Barnhart*, 364 F.3d 501, 503

(3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity."

*Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

## III.   DISCUSSION

Plaintiff challenges several aspects of the ALJ's decision, and generally asserts that the ALJ incorrectly applied the law and failed to rely on substantial evidence to find that Plaintiff did not meet the Act's definition of disability. Specifically, Plaintiff asserts that: (1) the ALJ erred at step two in designating Plaintiff's severe mental impairments; (2) the ALJ incorrectly found at step three that Plaintiff's mental impairments did not meet or medically equal a listed impairment; (3) the ALJ wrongly weighed the opinion evidence of Plaintiff's treating physician; (4) the ALJ's assessment of Plaintiff's subjective complaints was not supported by substantial

evidence; and (5) the ALJ posed a hypothetical inquiry of the vocational expert (VE) that did not include all of Plaintiff's limitations.

### A.  The ALJ's Identification of Plaintiff's Severe Impairments

Plaintiff argues that the ALJ erred, at step two, by not properly identifying all of her severe impairments. At step two, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

Specifically, Plaintiff now asserts that she suffers from panic disorder with agoraphobia and bipolar disorder, which the ALJ did not find to be among Plaintiff's severe impairments. This argument is unavailing. The ALJ found that Plaintiff had three severe mental impairments: affective disorder, anxiety disorder, and personality disorder. Indeed, affective disorder, in fact, encompasses bipolar disorder,[3] and panic disorder is a type of anxiety disorder.[4] Further, even if these supposedly ignored disorders were not encompassed within the impairments that the ALJ found, any failure to credit these impairments would be harmless because, as discussed below, Plaintiff did not satisfy her burden of demonstrating that *any* specific impairment, or a combination of impairments, equals all of the criteria of a listed impairment. *See Gullace v. Colvin*, No. 15-7630, 2017 WL 714356, at *10 (D.N.J. Feb. 23, 2017) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)) (noting that a failure to identify an impairment as severe is harmless unless the attacking party can "affirmatively identify evidence that the impairment imposes additional limitations on his or her functional capabilities").

### B.  The ALJ's Finding that a Listing Was Not Met or Equaled

---

[3] *See* DSM-5 and Psychotic and Mood Disorders, THE JOURNAL OF THE AMERICAN ACADEMY OF PSYCHIATRY AND THE LAW, 42-2 (2014), available at http://jaapl.org/content/42/2/182 ).
[4] *See generally* Anxiety Disorders, National Institute of Mental Health – Mental Health Information, available at https://www.nimh.nih.gov/health/topics/ anxiety-disorders/index.shtml.

Plaintiff asserts that the ALJ erred at step three in the sequential evaluation process in finding that she did not have an impairment that met or equaled the criteria of the Listings, including mental Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders). The Listings are a regulatory device used to identify those claimants whose medical impairments are so severe that they would be found disabled regardless of their vocational background. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). To meet a listed impairment, a plaintiff is required to prove that she "meet[s] *all* of the specified medical criteria." *Id*. at 530 (emphasis in original). Meeting only some criteria for a listing, "no matter how severely, does not qualify." *Id*. The plaintiff bears the burden of proving a presumptively disabling impairment under the listings. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ found that Plaintiff had moderate limitations in the categories of activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace (all pursuant to the paragraph "B" criteria of the mental listings). To satisfy the "B" criteria under these listings, a claimant's impairments must result in at least two of the following: (1) "marked" restrictions in activities of daily living; (2) "marked" difficulties in maintaining social functioning; (3) "marked" difficulties in concentration, persistence, or pace; or (4) "repeated" episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04B, 12.06B, 12.08B.

The ALJ determined, after reviewing the record, that the evidence supported only a classification of "moderate" restriction in these categories. As the ALJ correctly noted, the record evidence shows that Plaintiff is able to cook, do dishes, use the computer, watch television, read, help care for pet cats, crochet, drive, use email and Facebook, visit her mother frequently, play social video games, and handle the family finances. Further, contrary to Plaintiff's assertion, the ALJ did not overlook evidence that Plaintiff could not perform these

activities on an "independent, " "appropriate, " and "effective" basis in accordance with SSR l 6-3p.3. For instance, that Plaintiff can only do housework while wearing earplugs, which Plaintiff highlights as demonstrating the severity of her limitations, does not mean that Plaintiff could not perform the work independently, appropriately, or effectively.

Thus, the ALJ's finding of "moderate" impairments that did not meet or equal the criteria of any Listings is supported by substantial evidence.

### C. The ALJ's Decision to Discount the Opinion of Plaintiff's Treating Psychiatrist, Dr. Javia

 Plaintiff strenuously objects to the ALJ's decision to afford "little weight" to the opinion of Plaintiff's psychiatrist, Dr. Javia, that Plaintiff had "poor to no ability" in twelve areas of work-related mental functioning.  It is well established that "the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c).) Furthermore, while an ALJ must consider the opinions of treating physicians, "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ" where it is not well supported or there is contradictory evidence. *Chandler*, 667 F.3d at 361 (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011));

 Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion will be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Several factors may also be used to determine the weight given to a medical opinion including: the length of the treatment relationship; the nature and extent of the treatment relationship; supportability by the medical evidence; and consistency with the record as a whole. *Id.* If a treating source's opinion conflicts with that of other medical sources, "the ALJ

may choose whom to credit but cannot reject evidence for no reason or for the wrong reasons." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). That is, the ALJ must rely only on "contradictory medical evidence" in rejecting the treating source's opinion, rather than "credibility judgments, speculation or lay opinion." *Id.* An ALJ may also grant less weight to a treating physician's opinion where it conflicts with his or her own treatment notes. *See, e.g., Millard v. Comm'r.,* 2014 WL 516525, at *2 (W.D.Pa. Feb.7, 2014). An ALJ is required to provide "an explanation of the reasoning behind [his] conclusions," including "reason(s) for discounting rejected evidence." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d. Cir. 2001).

Here, the ALJ correctly assigned "little weight" to Dr. Javia's opinion because it was not entirely supported by other clinical assessments in the record. For instance, the ALJ pointed to the therapy notes of Kassick, who saw her "once every few weeks" and reported, in contrast to Dr. Javia's single assessment, that she had "relatively unchanged mental status exams of an anxious affect but only mild depression and no attential [sic] difficulties or gross behavioral abnormalities." AR 25. Further, he "indicated the claimant had anxiety and symptoms of agoraphobia, but she primarily discussed only low frustration tolerance and low self-esteem in her sessions." AR 22. In addition, the ALJ found that the therapy notes of Stahl, undermine Dr. Javia's opinion. Stahl observed that Plaintiff "reported an inability to leave the house, but she went to Barnes and Noble at least twice with her husband" and noted that Plaintiff was socializing "the same amount with family and friends as she was in 2014." AR 25. Plaintiff also had normal mental status exams with Stahl, and her self-care and domestic skills were recorded as "intact and unimpaired." AR 25. The ALJ also observed that Stahl "specifically discussed steps the claimant needed to take to be able to return to work, but the claimant was 'not receptive

to this plan.'" AR 25. The ALJ also noted that the reports of the state agency examiners, Dr. Foley and Dr. Abrams, were generally consistent with those of Kassick and Stahl.

Further, the ALJ appropriately observed that Dr. Javia's own treatment records did not entirely support his findings as to Plaintiff's mental functioning. For instance, the ALJ pointed to the following observations contradicting the 2016 assessment:

> [T]he claimant was seen generally no more frequently than once a month and [Dr. Javia] notes that she had anxiety and noise sensitivity, but she was calmer with less anxiety on medication (particularly with Abilify, which she later stopped on her own, and then Lexapro), she had only vague somatic complaints, she reported feeling 'good' for several months in 2015 and her husband also reported several times in 2015 that she was doing good/better, her mood swings were noted to be more stable, she was repeatedly not suicidal, she reported no panic attacks in February 2015, the claimant repeatedly repotted no medication side effects, and it was repeatedly noted that the claimant had a good response to therapy.

AR 25. This thorough review of Dr. Javia's treatment notes, along with the other contradictory medical evidence, demonstrates that ALJ's according of little weight to Dr. Javia's opinion was supported by substantial evidence.

### D. The ALJ's Residual Functional Capacity Assessment

Plaintiff next challenges the ALJ's RFC findings, at step four. "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a). The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546; *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). "[I]n making a residual functional capacity determination, the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which

he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. "Where the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff argues that, in making her RFC determination, the ALJ improperly weighed Plaintiff's subjective evaluation of her symptoms. A claimant's subjective symptoms must be corroborated by objective medical evidence; *i.e.*, evidence of a medically determinable impairment that can reasonably be expected to produce the claimant's underlying symptoms. *Hartranft v. Patel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529). If the ALJ determines that a medical impairment could reasonably cause the alleged symptoms, she must evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" to determine the extent to which it affects the Plaintiff's ability to work. SSR 96–7p, 1996 SSR LEXIS 4 (S.S.A. July 2) at *2; *Garibay v. Comm'r Of Soc. Sec.*, 336 Fed. Appx. 152, 157 (3d Cir. 2009). "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96–7p, at *2; *Garibay*, 336 Fed. Appx. at 157. In complying with this standard, the decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, at *3–4. In determining whether a claimant's statements are supported by the overall

record, the ALJ will consider evidence from physicians, and other factors such as the claimant's daily activities; descriptions of symptoms; medications; and other treatment. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p (S.S.A.). Credibility determinations are entitled to substantial deference on appeal. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (stating that courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness' demeanor").

In the present case, the ALJ determined that Plaintiff's RFC was limited to "routine, repetitive tasks," with "infrequent changes in the work setting," "occasional interaction with co-workers and supervisors," rare to no "interaction with the public," and no exposure to heights or hazards. AR 20. In reaching this decision, the ALJ thoroughly discussed Plaintiff's subjective opinions and, as is required, provided specific reasons for assigning them little weight. At the hearing, Plaintiff reported an inability to drive, to use public transportation, to perform even basic chores without earplugs, to leave her house to shop, to socialize with friends, or to make it through a week without several panic attacks. AR 21. However, the ALJ found that the following evidence in the record did not entirely corroborate Plaintiff's subjective testimony: (1) control of symptoms with medication, particularly Lexapro; (2) infrequent counseling and other treatment, including missed appointments with Dr. Javia; (3) progress notes also predominantly indicated that the claimant's self-care skills and domestic skills were "intact and unimpaired" and she had normal mental status exams; (4) the reports of Stahl, Kassick, and the state medical examiners, and (5) participation in group therapy at Hunterdon. AR 24-26.

Thus, the ALJ's decision at step four to assign "little weight" to Plaintiff's subjective assessment of her symptoms was supported by substantial evidence.

### E. The ALJ's Hypothetical Inquiry to the VE

Next, Plaintiff challenges the hypothetical questions that the ALJ posed to the VE. When an ALJ poses a hypothetical question to a VE that fails to reflect all of the applicant's impairments that are supported by the record, the vocational expert's opinion generally cannot be considered substantial evidence. *See Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) ( [A]n ALJ's hypothetical must include all of a claimant's impairments."); *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x, 280, 287 (3d Cir. 2006) ("The ALJ's hypothetical questions to a vocational expert must reflect all of a claimant's impairments supported by the record or the vocational expert testimony cannot be considered substantial evidence."). However, where an ALJ does not include an alleged impairment or limitation in his or her RFC determination, the ALJ need not pose that alleged impairment or limitation to the vocational expert. *See Schmits v. Astrue*, 386 F. App'x 71, 76 (3d Cir. 2010) ("Because that limitation is not in [the claimant's] RFC, the ALJ did not need to consider it at Step Five" in posing a hypothetical to a vocational expert); *Izzo*, 186 F. App'x at 287 (finding that the ALJ did not err in failing to include in his hypothetical questions to the vocational expert "specific reference[s] to [the claimant's] functional loss, mental limitations, and subjective complaints of pain and fatigue," where the ALJ had already discredited those alleged impairments, excluding them from his RFC determination); *Russo v. Comm'r of Soc. Sec.*, No.13–06918, 2014 WL 6991987, at *11 (D.N.J. Dec. 10, 2014) (observing that where "an ALJ has appropriately rejected a limitation, that limitation need not be conveyed to the vocational expert.").

Here, Plaintiff's central complaint with the ALJ's hypothetical was that it did not include limitations deriving from Dr. Javia's opinion. However, as previously discussed, the ALJ had already properly determined that Dr. Javia's opinion was not well-supported and assigned it little

weight.[5] At that point, an ALJ was not compelled to include any limitations from that opinion in her hypothetical inquiry. *See Priel v. Astrue*, 453 F. App'x 84, 87–88 (2d Cir. 2011) ("In determining Priel's RFC, the ALJ properly evaluated the entirety of the record, including both medical and non-medical evidence, and discounted Dr. Young's opinion insofar as it conflicted with other substantial evidence. At the same time, the ALJ properly declined to include in his hypothetical question symptoms and limitations that he had reasonably rejected.").

Therefore, the ALJ's hypothetical question to the VE was not improper.

## IV.    CONCLUSION

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.


Dated:  November 20, 2018                         /s/ Freda L. Wolfson
                                                  Hon. Freda L. Wolfson
                                                  United States District Judge

---

[5] This includes Dr. Javia's opinion that Plaintiff could not maintain consistent pace without an unreasonable number and length of rest periods, which Plaintiff contends the ALJ improperly omitted, in contravention of *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004).